1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10  BRYAN JOHNSON,

11              Petitioner,                No. 2:08-cv-0224-LKK-JFM (HC)

12        vs.

13  CLAUDE FINN,

14              Respondent.            FINDINGS AND RECOMMENDATIONS

15  _____/

16              Petitioner is a state prisoner proceeding through counsel with an application for a

17  writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2006 decision of

18  California Governor Arnold Schwarzenegger reversing a decision by the California Board of

19  Parole Hearings (Board) to grant petitioner a parole date.

20                     FACTUAL AND PROCEDURAL BACKGROUND

21              On March 16, 1990, petitioner was sentenced to seventeen years to life in state

22  prison following his conviction on charges of second degree murder with use of a firearm.  Ex. 1

23  to Answer to Petition for Writ of Habeas Corpus, filed April 21, 2008. Petitioner shot the victim

24  during an altercation that followed a drug deal.  Ex. 5 to Answer, at 8-13.  Petitioner was twenty-

25  eight years old at the time of his commitment offense.  Id. at 19.

26  /////

                                         1

On April 19, 2006, petitioner appeared before the Board for a subsequent parole consideration hearing.  At the conclusion of the hearing, the Board found petitioner suitable for parole.  The Board's determination that petitioner "would not pose an unreasonable risk of danger to society or a threat to public safety if released from prison" was based on several findings:  (1) petitioner "has no juvenile record of assaults"; (2) in prison petitioner "has enhanced his ability to function within the law upon release through participating in educational programs, "achieving his doctorate of divinity, master's BA through the Universal Life Church", a certificate from the American School of Mortgage Banking, participating in AA, completing "some FEMA courses" as well as a paralegal program and a drafting program; and (3) petitioner had received "several laudatory chronos," had been deemed a "critical employee" at a prison job, had worked at a variety of jobs during a thirty day lockdown at Folsom Prison, and had received a "glowing letter" in 2005 from a psychologist.  Id. at 84-86.  With respect to that letter, the Board noted that they "were particularly impressed by [the psychologist's] impression of you in terms of your scholastic ability here, and it's not only scholastic, it's – you're being a good peer, you're being a good buddy.  You're doing something positive here and you can carry that to the outside."  Id.  The Board also noted that petitioner did not have "any significant history of violent crime."  Id.  The Board also noted petitioner's specific employment plans and support from his family, id. at 88-89, as well as the fact that petitioner had no serious disciplinary violations in the nearly seventeen years he had been in prison, and his last 128 had been in 1992.  Id. at 90.  In addition, the Board found that petitioner had "shown remorse and accepted responsibility" for his criminal behavior.  Id.

On September 5, 2006, Governor Schwarzenegger issued the decision challenged in the instant action, reversing the Board's grant of parole.  In relevant part, the Governor's decision was as follows:

> In reviewing the Board's 2006 decision, I have considered various positive factors concerning Mr. Johnson's parole suitability.  In prison, Mr. Johnson maintained a discipline-free conduct record,

although he was counseled five times, most recently in 1996, for minor misconduct.  He also made efforts to enhance his ability to function within the law upon release.  Mr. Johnson, who entered prison with a high school diploma, earned a paralegal certificate in 2000 and completed numerous business, banking, and emergency management courses.  He also completed vocational mechanical drawing and received a master's degree in religion and a doctorate in religious philosophy from the Universal Life Church, the church which ordained Mr. Johnson as a minister in 1995.  He worked institutional jobs such as counselor's clerk, peer education instructor, typist, porter, laundry laborer, clerk/runner, tier tender, office clerk, and Prisoner Advisory Counsel President.  In addition, he availed himself of an array of self-help and therapy, including Narcotics Anonymous, Alcoholics Anonymous, Substance Abuse Program, Personal Growth and Life Skills Process, Anger Management, Breaking Barriers, Cage Your Rage, Prisoner Re-entry Program, Domestic Violence Group, Alternative to Violence Project, and Communicable Disease Risk Reduction.  He maintains supportive relationships with family and friends and he received some positive evaluations from mental health and correctional professionals over the years.  His plans upon parole include living with his wife in Los Angeles County, the county of last legal residence, and working at a construction company.

Despite the positive factors I have considered, the second-degree murder for which Mr. Johnson was convicted was especially grave, in part because it was committed during the course of criminal activity.  The Court of Appeal found that "[t]he evidence, direct and circumstantial, points unwaveringly to defendant's having killed a potential drug customer after accusing him of being the police and immediately after a struggle for the weapon."  Mr. Johnson told the 2006 Board that after Mr. Knight "snatche[d]" his money during their cocaine transaction and ran, Mr. Johnson followed him and they fought.  When the fight ended, Mr. Johnson said he turned to walk away, but when he heard his brother holler "watch out," Mr. Johnson thought Mr. Knight was about to shoot him, so "I grab the gun out of my back pocket and I turn and I shoot twice."  Mr. Johnson admitted to the 2006 Board, however, that there was no evidence that Mr. Knight had been armed with a weapon.  Instead, the Court of Appeal opinion noted that Mr. Knight ran back to Mr. Atwood's car "amidst a hail of gunfire," and that Mr. Atwood drove away "while shots were being fired at the car."  Thus, this was a senseless crime that resulted in Mr. Knight's death and also put Mr. Atwood at risk for serious injury.  The gravity of the second-degree murder committed by Mr. Johnson is alone sufficient for me to conclude presently that his release from prison would pose an unreasonable public safety risk.  The Los Angeles District Attorney's Office expressed to the 2006 Board its opposition to Mr. Johnson's parole, based in part on the gravity of the murder he committed.

/////

3

1
2
3
4

> At age 45 now, after being incarcerated for more than 16 years, Mr.
> Johnson says he accepts responsibility for the murder and is
> remorseful for his action.  But given the record before me and after
> carefully considering the very same factors the Board must
> consider, I find that the negative factors weighing against Mr.
> Johnson's parole suitability presently outweigh the positive ones
> tending to support it.

5   Ex. 6 to Answer.

6   Petitioner challenged the Governor's decision in state court through petitions for

7   writ of habeas corpus filed at every level of the state court system.  The last reasoned rejection of

8   his challenge was the decision of the Los Angeles County Superior Court, which, citing two

9   California Supreme Court cases, found "ample evidence" to support the Governor's decision, and

10  nothing in the decision "which indicates it was arbitrary and capricious.  Rather, it complies with

11  the standard required by law."  Ex. 2 to Answer.

12                                    ANALYSIS

13  I.  <u>Standards for a Writ of Habeas Corpus</u>

14  Federal habeas corpus relief is not available for any claim decided on the merits in

15  state court proceedings unless the state court's adjudication of the claim:

16          (1) resulted in a decision that was contrary to, or involved an
17          unreasonable application of, clearly established Federal law, as
            determined by the Supreme Court of the United States; or

18          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
19          State court proceeding.

20  28 U.S.C. § 2254(d).

21  Under section 2254(d)(1), a state court decision is "contrary to" clearly

22  established United States Supreme Court precedents if it applies a rule that contradicts the

23  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

24  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

25  result.  <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406

26  (2000)).

1  Under the "unreasonable application" clause of section 2254(d)(1), a federal

2 habeas court may grant the writ if the state court identifies the correct governing legal principle

3 from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

4 prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

5 simply because that court concludes in its independent judgment that the relevant state-court

6 decision applied clearly established federal law erroneously or incorrectly.  Rather, that

7 application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

8 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

9 question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

10 omitted).

11  The court looks to the last reasoned state court decision as the basis for the state

12 court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

13 reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

14 habeas court independently reviews the record to determine whether habeas corpus relief is

15 available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

16 II.  Petitioner's Claim

17  Petitioner claims that the Governor's decision violates his federal constitutional

18 law because the decision was not supported by any evidence, and there was no nexus between the

19 facts found by the Governor and petitioner's current dangerousness.

20  California law creates a liberty interest in parole protected by the due process

21 clause of the United States Constitution.  See Pirtle v. California Board of Prison Terms, _ F.3d _

22 , 2010 WL 2732888, slip op. at 4 (9th Cir. July 12, 2010) (quoting McQuillion v. Duncan, 306

23 F.3d 895, 902 (9th Cir. 2002)).  "That liberty interest encompasses the state-created requirement

24 that a parole decision must be supported by 'some evidence' of current dangerousness."  Pirtle,

25 id. (citing Hayward v. Marshall, 603 F.3d 546, 562-63 (9th Cir.2010) (en banc); also citing

26 Pearson v. Muntz, 606 F.3d 606, 608-09 (9th Cir.2010)).

To assist in determining who may pose an unreasonable risk of danger, the California parole regulations identify circumstances that "tend[ ] to indicate unsuitability for release." Cal.Code Regs., tit. 15, § 2402(c). These circumstances include the aggravated nature of the commitment offense, a previous record of violence, an unstable social history, sadistic sexual offenses, a history of severe mental problems related to the offense, and serious misconduct in jail. Id. The regulations also identify circumstances that "tend to show suitability" for parole, including the lack of a juvenile record, a stable social history, signs of remorse, significant stress as a motivation for the crime, lack of criminal history, realistic plans for the future, and good institutional behavior. Id. § 2402(d).

Pirtle, slip op. at 4.

Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole," [In re Lawrence, 44 Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535] at 552 [(2008)], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety." Id. at 554. Accordingly, for a reviewing court "the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety." Id. at 553; see also Hayward, 603 F.3d at 562 (noting that " 'some evidence' of future dangerousness is indeed a state sine qua non for denial of parole in California") (citing Lawrence, 82 Cal.Rptr.3d 169, 190 P.3d at 549; In re Shaputis, 44 Cal.4th 1241, 82 Cal.Rptr.3d 213, 190 P.3d 573, 582 (2008)).

Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010). "[T]he ultimate question of parole suitability [is] whether the inmate poses a threat to public safety." Pirtle, slip op. at 5. There must be "some evidence" of such a threat, and neither the Board nor the Governor may "rely solely on the circumstances of a commitment offense, because '[t]he prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre-or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness.' [Hayward at 562] (quoting Lawrence, 82 Cal.Rptr.3d 169, 190 P.3d at 555)." Id.

In the instant case, the Governor relied solely on petitioner's commitment offense, which occurred more than sixteen years prior to his decision, to reverse the Board's finding that

1   petitioner is suitable for parole.  The Governor cited nothing from petitioner's pre- or post-
2   conviction history to support his conclusion that petitioner's release from prison " would pose an
3   unreasonable public safety risk."  The exhaustive findings made by the Board in their decision,
4   many of which were cited by the Governor, explain this omission:  there was a dearth of evidence
5   in the record to support a determination that petitioner posed a current danger to the community.
6   The Governor's decision to find petitioner unsuitable for parole was not supported by "some
7   evidence" of current dangerousness.  Consequently, the decision violated petitioner's right to due
8   process.

9          Petitioner is only entitled to relief if the last reasoned state court decision rejecting
10  his claim was "contrary to, or involved an  unreasonable application of, clearly established
11  Federal law, as determined by the Supreme Court of the United States; or . . .  was based on an
12  unreasonable determination of the facts in light of the evidence presented in the State court
13  proceeding."  28 U.S.C. § 2254(d).  The state superior court's decision was both contrary to
14  applicable principles of federal law and an unreasonable determination of the facts in the record.
15  Accordingly, petitioner is entitled to relief from this court and this court will recommend that the
16  California Board of Parole Hearings be ordered to set a parole date that will ensure that petitioner
17  is released on parole within thirty days from the date of any order by the district court adopting
18  these findings and recommendations.  See Pirtle, slip op. at 8.

19         In accordance with the above, IT IS HEREBY RECOMMENDED that

20         1.  Petitioner's application for a writ of habeas corpus be granted; and

21         2.  The California Board of Parole Hearings be directed to set a parole date for
22  petitioner that will ensure his release on parole within thirty days from the date of any order by
23  the district court adopting these findings and recommendations.

24         These findings and recommendations are submitted to the United States District
25  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
26  days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned

2  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

3  objections shall be filed and served within fourteen days after service of the objections.  The

4  parties are advised that failure to file objections within the specified time may waive the right to

5  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6  DATED: August 19, 2010.

UNITED STATES MAGISTRATE JUDGE

12
john0224.157